IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| NANCY L. BOYER-SNEDDON § | |
| § | |
| V. § | |
| § | A-09-CA-757 AWA |
| MICHAEL J. ASTRUE, § | |
| COMMISSIONER OF THE § | |
| SOCIAL SECURITY ADMINISTRATION § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are: Plaintiff's Original Complaint seeking reversal of the final decision of the Social Security Administration (Clerk's Doc. No. 1); Plaintiff's Brief in Opposition to the Commissioner's Decision (Clerk's Doc. No. 12); Defendant's Brief in Support of the Commissioner's Decision (Clerk's Doc. No. 13). Also before the Court is the Social Security Record filed in this case (Cited as "Tr."). Both parties have consented to have the undersigned adjudicate the claims.

**I.   GENERAL BACKGROUND**

On September 26, 2006, Nancy L. Boyer-Sneddon (hereinafter referred to as "Plaintiff" or "Boyer-Sneddon") filed an application for disability insurance benefits under Title II of the Social Security Act for a period of disability and disability insurance benefits, alleging disability beginning August 2, 1998. (Tr. 8). Her claim was initially denied by Notice dated December 6, 2006, and again by Notice of Reconsideration dated March 6, 2007. Boyer-Sneddon timely filed a request for a hearing by an ALJ, which was held on April 3, 2008, in Austin, Texas. (Tr. 31-75). Boyer-Sneddon testified at the hearing and was represented by her attorney, Philip L. Lerway. Terry L. Vander-Molen, a vocational expert, also appeared and testified at the hearing. The ALJ issued an unfavorable decision dated June 25, 2008, finding that Boyer-Sneddon was not disabled within the meaning of the Act. (Tr. 18-28). The Appeals Council declined Boyer-Sneddon's Request for

Review by Notice dated May 12, 2009, making it the Final Decision of the Commissioner. (Tr. 6-8). On October 16, 2009, Boyer-Sneddon brought the instant action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying her benefits under the Act.

## II.  FINDINGS OF ADMINISTRATIVE LAW JUDGE

The ALJ found that Plaintiff had the following severe impairments: a reported history of head injury (with alleged seizures and headaches); depression and anxiety. (Tr. 20). The ALJ further found that Plaintiff did not have an impairment or combination of impairments that meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 21). In regard to residual functional capacity ("RFC"), the ALJ found that during the relevant period Plaintiff had the RFC to perform a limited range of light work.  The ALJ found that during the relevant period, Plaintiff was able to lift/carry twenty pounds occasionally and ten pounds frequently, and to walk/stand for six hours and to sit for eight hours during an eight-hour workday, that she needed to avoid dangerous machinery, and she was able to perform simple repetitive work. (Tr. 21). After considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could have performed through the date last insured.  (Tr. 26).[1] Specifically, the ALJ found that Plaintiff was capable of performing the requirements of occupations such as assembler of small parts (15,000 in the regional economy; 150,000 in the United States), electronics worker (10,000 in the regional economy; 100,000 in the United States), and cleaner/housekeeper (25,000 in the regional economy; 250,000 in the United States) (Tr. 27).  Accordingly, the ALJ found that Plaintiff was not disabled, as defined

---

[1]Plaintiff's date last insured was June 30, 2003. Therefore, she had to establish disability on or before that date to be entitled to benefits.

in the Act, at any time from August 2, 1998, the alleged onset date, through June 30, 2003, the date last insured. (Tr. 27).

### III.  ISSUES BEFORE THE COURT

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and is not based upon the proper legal standards.  Specifically, Plaintiff argues that: (1) the ALJ did not properly evaluate evidence related to Plaintiff's RFC, particularly in regard to Plaintiff's ability to sustain work; and (2) the ALJ erred because her decision is inconsistent with the requirements of *Watson v. Barnhart*, 288 F.3d 212, 288 (5th Cir. 2002); *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003); and *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003).

### IV.  STANDARD OF REVIEW

In Social Security disability appeals, the limited role of the reviewing court, as dictated by 42 U.S.C. § 405(g), is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standard. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *James v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Courts weigh four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.  *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).  However, the reviewing court cannot re-weigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*,

67 F.3d 558, 564 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Martinez*, 64 F.3d at 174. If supported by substantial evidence, the Commissioner's findings are conclusive and are to be affirmed. *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988).

## V. ANALYSIS

**A.  Did the ALJ Properly Determine Plaintiff's RFC with Regard to Her Ability to Perform Sustained Work?**

Plaintiff argues that the ALJ's RFC finding, particularly relating to Plaintiff's ability to sustain work, is inconsistent with the medical evidence in the record. "[R]esidual functional capacity" (RFC) is "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c). In evaluating whether a claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's "ability to work on a sustained basis." 20 C.F.R. § 404.1512(a). The regulations further specify: "When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis." *Id.* at § 404.1545(b). A residual functional capacity assessment, by definition, reflects a person's ability to work on a sustained basis. *See Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003).

In support of this argument, Plaintiff relies largely on medical evidence that postdates her date last insured.[2] Plaintiff complains that the ALJ must have improperly failed to consider this

---

[2]As noted above, Plaintiff's date last insured was June 30, 2003. This means that she must prove that she was disabled prior to that date to be entitled to disability insurance benefits under Title

4

evidence because "there is evidence of a long history of depression and anxiety." Plaintiff's Brief at p. 6. The flaw in this argument is that this history occurred outside the relevant time frame. As the ALJ found, the record contains "few details about the claimant's condition on or before June 30, 2003." (Tr. 23). In fact, the first medical record cited by Plaintiff in her brief is dated May 2, 2003—just two months prior to the expiration of her insured status.[3] This entirety of the record medical evidence Plaintiff relies upon concerning her depression and anxiety during the relevant period is brief, and consists of only the following:

- On May 2, 2003, she was seen in the ER for a head laceration sustained at a bar. (Tr. 279-281).

- She was seen again on May 6, 2003, reporting sadness due to the loss of a pet, and was prescribed Paxil. (Tr. 279). She was diagnosed with depression due to grief or bereavement. (Tr. 278).

- On June 2, 2003, she missed a followup appointment. (Tr. 276).

- On June 16, 2003, she was seen for a followup appointment for her depression medication. At that visit she reported she had never been on an antidepressant before. (Tr. 275).

The record shows the ALJ considered all of this evidence in determining Plaintiff's RFC. (Tr. 22). With regard to her claims that she was kicked by a horse and suffered seizures and migraines, the ALJ noted that there is no evidence in the record for the relevant period supporting these claims. Despite the lack of medical support for these claims, the ALJ generously incorporated avoidance of work around dangerous machinery, and a range of light work designed to accommodate Plaintiff's alleged headaches and seizures. (Tr. 23). As the ALJ stated:

---

II. *See* 42 U.S.C. §§ 416(i)(3), 423(c).

[3]The ALJ noted that Plaintiff was seen in July 2001 for complaints of depressive symptoms, was recommended psychotherapy, but rated her mental health status as "very good." (Tr 22). Plaintiff does not cite to this record evidence.

5

> The residual functional capacity for a limited range of light work is generous given the relative paucity of medical evidence pertinent to the relevant period. The available evidence shows that the claimant expressed few physical complaints (pertinent to her alleged disability) to her doctors during the relevant period. The available evidence also reflects few positive physical findings pertinent to the allegations of disability during the relevant period. In particular, complaints of mental symptoms were sporadic, at best, and there is no evidence of any significant mental health treatment until just before the date last insured, and such treatment was quite conservative and remained so, and was even sporadic until well after the date last insured. There is nothing in the medical record to suggest that the claimant would have been unable to perform and maintain simple repetitive work during the relevant period.

(Tr. 25).

The Fifth Circuit has held that if a claimant has a degenerative or ongoing impairment, the relevant inquiry is whether the claimant was actually disabled during the relevant time, not whether a disease existed that ultimately progressed to a disabling condition after the date last insured. *McLendon v. Barnhart*, 184 Fed. App'x. 430, 431 (5th Cir. 2006). Thus, evidence showing a degeneration of a claimant's condition after the expiration of her Title II insured status is not relevant to the ALJ's Title II disability analysis. *Id.* Given the particular impairments at issue in this case, namely depression and anxiety, and the nature of the evidence, the undersigned finds that evidence post-dating Plaintiff's insured date is irrelevant to the question of whether Plaintiff could perform sustained work before her insured status expired, and the ALJ was not required to consider evidence after the last insured date in determining Plaintiff's RFC.

Moreover, as the ALJ noted, there is evidence post-dating Plaintiff's date of last insured in that casts doubt on Plaintiff's credibility related to her RFC. The ALJ specifically found that although Plaintiff reported developing depressive symptoms in the spring of 2003, a February 2004 examination report provided a diagnosis of depression but noted that Plaintiff had not been seeing a psychologist or psychiatrist for treatment or counseling. (Tr. 268-69). The ALJ noted that Plaintiff was working as a bartender during this time and had taken over "numerous" household

responsibilities since her husband left the state. (Tr. 23). The ALJ also noted that "records from May 2004 show that the claimant, who sought additional facial plastic surgery that month (she has a substantial history of prior voluntary facial plastic surgery), had no complaints, apart from excess skin around her eyes . . ." (Tr. 23).

Plaintiff argues that she could not maintain employment because the evidence showed she attended treatment at least once a month or more, and the VE testified that an individual could not maintain employment if she were unable to attend work with fewer than one or two absences per month. (Tr. 74). Plaintiff cites to no record evidence from the relevant period supporting her claim she would be required to miss work more than once a month due to her alleged disabling conditions. Indeed none exists, other than her own testimony, which the ALJ found lacked credibility. (Tr. 24). The ALJ cited to numerous inconsistencies in Plaintiff's testimony in support of this finding. (Tr. 25).

After reviewing the record, the undersigned finds the ALJ's RFC finding is properly supported by substantial evidence. The ALJ properly considered the relevant medical evidence, and that evidence supports the RFC assessment. Accordingly, the Court rejects Plaintiff's assertion that the ALJ erred in her RFC assessment.

    **B.**    **Is the ALJ's Decision Consistent with *Watson v. Barnhart* and its Progeny?**

Plaintiff asserts that the ALJ erred in not making a separate finding that she could sustain employment. Plaintiff relies upon *Watson v. Barnhart*, 288 F.3d 212, 288 (5th Cir. 2002); *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003); and *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003), for this proposition.

In *Watson v. Barnhart*, 288 F.3d 212, 218 (5th Cir. 2002), the Fifth Circuit held that the ALJ erred by failing to determine whether Watson was capable not only of obtaining, but also

maintaining employment. *Watson*, 288 F.3d at 218. However, the Fifth Circuit has clearly rejected the idea that an ALJ must in all cases make a separate finding that a claimant has the ability to maintain employment. Any such required extra finding must be predicated on the claimant having an impairment that waxes and wanes in its manifestation of disabling symptoms. *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003); *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003); and *Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005).

In this case, Plaintiff has not offered evidence that her condition "waxes and wanes" in intensity such that her ability to maintain employment was not adequately taken into account in her RFC determination. With regard to Plaintiff's claim that she suffered a seizure disorder as a result of being kicked in the head by a horse in 1997, the ALJ noted scant evidence of this incident in the record and that Plaintiff earned over $10,000.00 in 1998, after this incident allegedly occurred. (Tr. 23). The evidence within the relevant period is that Plaintiff was treated for depression for one month prior to the end of her insured period and at that time, stated that she had never before been on an antidepressant. (Tr. 23). In her brief, as evidence of her inability to sustain employment, Plaintiff argues that at the time of her hearing she lived in the country in isolation, and that her jobs as a bartender had been sporadic. *See* Plaintiff's Brief at p. 10. The ALJ noted that Plaintiff's employment history had been sporadic, but found it was sporadic not because of the Plaintiff's medical condition, but because of decisions Plaintiff had made unrelated to her condition. For example, the ALJ pointed to Plaintiff's statement that "I stopped working b/c the money I earned was not worth the gas for the commute and I have a college degree did not need to work as a bartender [sic]." (Tr. 24). The ALJ also noted that Plaintiff had quit a bank teller position, not because of a medical condition, but because she moved to Ohio. (Tr. 24). The ALJ stated:

> The reasons the claimant provided for stopping work—low pay, a job she thought was not commensurate with her college education, and moving out of state—have

no bearing on the issue of the claimant's physical and/or mental ability to work. Her responses in the work activity report—specifically, her admissions that her medical condition was not a factor in her stopping work—not only diminish her testimony with respect to her inability to work due to her impairments, but also support the conclusion herein that she was able to work and able to maintain work within the residual functional capacity described above during the period that she had originally alleged disability.

(Tr. 24). Like the claimant in *Frank*, Plaintiff did not establish the factual predicate required by *Watson* to necessitate a separate finding in this regard. *Frank*, 326 F.3d at 620. Accordingly, this argument is without merit, and is not a basis for remand.

## VI. CONCLUSION

In light of the foregoing, the undersigned Magistrate Judge **AFFIRMS** the final decision of the Commissioner.

SIGNED this 19th day of October, 2010.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE